**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**DENZIL ALAN STUTLER,**

      **Plaintiff,**

**v.**                                              **Case No.: 2:15-cv-11418**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' briefs wherein they both request judgment in their favor. (ECF Nos. 10, 14).

Having fully considered the record and the arguments of the parties, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 10), to the extent that it requests remand of the Commissioner's decision; **DENY**

1

Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g); and **DISMISS** this action from the docket of the Court.

## I.   <u>Procedural History</u>

On February 28, 2003, Administrative Law Judge Ronald L. Chapman ("ALJ Chapman") for the Social Security Administration ("SSA") found that Plaintiff Denzil Alan Stutler ("Claimant") was disabled and entitled to DIB for the period of August 13, 1999 through August 15, 2002. (Tr. at 68-72). ALJ Chapman determined that Claimant could perform the physical demands of work at any exertional level; however, Claimant suffered from disabling mental impairments. (Tr. at 69). Specifically, ALJ Chapman found that Claimant had the severe impairments of adjustment disorder with anxiety and depression; developmental reading disorder; developmental learning disorder; and borderline intellectual functioning. (Tr. at 69). ALJ Chapman also noted in his written decision that Claimant had a "third-grade literacy level" and that Claimant possessed a high school education, but attended special education classes in school. (Tr. at 69-70). Claimant's benefits ended in August 2002, because he returned to work that month as a siding and gutter installer. (Tr. at 70).

On March 30, 2012, Claimant protectively filed another application for DIB, alleging a disability onset date of April 2, 2010, (Tr. at 188-99), due to "heart attack, diabetes, high blood pressure, high cholesterol, [and] depression."[1] (Tr. at 241). The SSA denied Claimant's application initially and upon reconsideration. (Tr. at 117-21, 123-29).

---

[1] Claimant also filed an application for DIB on October 21, 2010, alleging a disability onset date of August 1, 2009. (Tr. at 181). That application was initially denied on January 21, 2011. (Tr. at 110-14). It does not appear from the record that Claimant appealed that decision.

Claimant filed a request for an administrative hearing, (Tr. at 130), which was held on December 4, 2013, before the Honorable William R. Paxton, Administrative Law Judge ("the ALJ"). (Tr. at 31-65). By written decision dated December 27, 2013, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 17-25). The ALJ's decision became the final decision of the Commissioner on March 16, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9). Thereafter, Claimant filed a Memorandum in Support of Judgment on the Pleadings, (ECF No. 10), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 14), to which Claimant filed a reply, (ECF No. 15). Consequently, the matter is fully briefed and ready for resolution.

## II.   **Claimant's Background**

Claimant was 52 years old at the time he filed the instant application for benefits, and 54 years old on the date of the ALJ's decision. (Tr. at 25, 189). He has a high school education, and in his disability report, which was completed by his wife, he denied attending special education classes. (Tr. at 242). Claimant communicates in English, he can read English, and he can write more than his name in English. (Tr. at 240). Claimant has previously worked as an installer of roofing and siding, pizza delivery driver, and restaurant kitchen worker. (Tr. at 38-40, 242).

## III.   **Summary of the ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A

disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also*

4

*McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review," including the review performed by the ALJ. 20 C.F.R. § 404.1520a. First, the ALJ evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If such impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ

assesses the claimant's residual function. *Id.* § 404.1520a(d)(3).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for disability insurance benefits through September 30, 2013. (Tr. at 19, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since April 2, 2010, his alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "coronary artery disease, s/p [status post] stenting, borderline intellectual functioning, depression, and anxiety." (Tr. at 19-20, Finding No. 3). The ALJ considered and found non-severe Claimant's diabetes, hypertension, gastroesophageal reflux disease, headaches, back pain, and alcohol abuse. (*Id.*)

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 20-21, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never perform climbing of ladders, ropes, or scaffolds, he can occasionally balance, kneel, stoop, crawl, and crouch, and he must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards such as heights and machinery. He can not [*sic*] perform work that requires driving on a frequent basis and is limited to understanding, remembering, and carrying out simple instructions and to occasional interaction with the public.

 (Tr. at 21-24, Finding No. 5). At the fourth step, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 24, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in substantial gainful activity.

(Tr. at 24-25, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born in 1959 and was defined as an individual closely approaching advanced age; (2) he had at least a high school education and could communicate in English; and (3) transferability of job skills was not material to the disability determination because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of transferable job skills. (Tr. at 24, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ concluded that Claimant could perform jobs that existed in significant numbers in the national economy, including unskilled work as a marker, sorter, or assembler at the light exertional level. (Tr. at 24-25, Finding No. 10). Therefore, the ALJ found that Claimant was not disabled as defined in the Social Security Act and was not entitled to benefits. (Tr. at 25, Finding No. 11).

## IV.   **Claimant's Challenges to the Commissioner's Decision**

Claimant raises two challenges to the Commissioner's decision. First, Claimant asserts that the ALJ failed to comply with Acquiescence Ruling 00-1(4) ("AR 00-1(4)"). (ECF No. 10 at 12). Claimant points out that he received a favorable decision in 2003, but the ALJ failed to mention that decision or AR 00-1(4) in the December 2013 written decision denying him benefits. (*Id.* at 14). Specifically, Claimant emphasizes ALJ Chapman's finding at step two that he suffered from a severe developmental reading disorder and that he possessed a third-grade reading level based on test results from the Wide Range Achievement Test, Third Edition ("WRAT-3"). (*Id.*) Claimant contends that the ALJ neglected to recognize ALJ Chapman's finding related to Claimant's reading level, let alone explain how Claimant's developmental reading disorder had improved since 2003. (*Id.*) Claimant insists that ALJ Chapman's findings support a conclusion that he is functionally illiterate, and if the ALJ had applied that conclusion here, the ALJ would

have found Claimant disabled under Rule 202.09 of the Medical-Vocational Rules listed in Appendix 2 of Subpart P of Part 404 (the "Grids"). (*Id.* at 15-16).

In his second challenge, Claimant argues that the ALJ failed to include limitations related to Claimant's moderate difficulty in maintaining concentration, persistence, or pace in the RFC finding and the controlling hypothetical question posed to the vocational expert at the administrative hearing. (*Id.* at 17). Claimant points out that the ALJ found at step three that Claimant experienced moderate difficulty in maintaining concentration, persistence, or pace; however, Claimant argues that the ALJ inadequately attempted to account for this limitation in the RFC finding by restricting Claimant to work that required only the ability to understand, remember, and carry out simple instructions. (*Id.*) According to Claimant, work that involves the understanding and carrying out of simple instructions still requires the ability to stay on task, which Claimant indicates he is incapable of doing. (*Id.*) Claimant contends that the ALJ erroneously found that he could perform jobs that would require him to maintain concentration, keep a pace, or meet a quota. (*Id.* at 17). In support of his position, Claimant cites the United States Court of Appeals for the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (*Id.*)

In response, the Commissioner contends that the ALJ complied with AR 00-1(4) by carefully considering the entire record. (ECF No. 14 at 11). The Commissioner notes that the List of Exhibits reviewed by the ALJ includes ALJ Chapman's written decision granting Claimant benefits. (*Id.* at 13). According to the Commissioner, the mandates of AR 00-1(4) were satisfied when the ALJ considered ALJ Chapman's findings as a part of the record review as a whole, even if the ALJ did not specifically refer to the 2003 decision or explain the weight given to ALJ Chapman's findings. (*Id.*) Separately, assuming

*arguendo* that the ALJ erred under AR 00-1(4), the Commissioner asserts any error was harmless for three reasons. (*Id.*) First, the Commissioner points out that Claimant was able to return to semi-skilled work after the favorable 2003 decision. (*Id.*) Second, the Commissioner argues that the ALJ limited Claimant to unskilled work, which took into account any developmental reading disorder experienced by Claimant. (*Id.* at 14). Lastly, the Commissioner insists that Claimant has failed to carry his burden in demonstrating that any error was harmful. (*Id.* at 14-15). To the extent that Claimant argues that a finding of functional illiteracy would have entitled him to disability under the Grids, the Commissioner argues that the evidence belies any claim of functional illiteracy. (*Id.* at 15-16). Specifically, the Commissioner asserts that Claimant is a high school graduate who reported that he could read English, write in English, and follow written instructions. (*Id.* at 15). Moreover, the Commissioner emphasizes Claimant's ability to perform semi-skilled work after 2003 and notes that Claimant never reported an inability to read at his most recent consultative examinations. (*Id.*) Additionally, the Commissioner refers to the administrative hearing, where Claimant's counsel did not argue that he was illiterate; to the contrary, Claimant testified that he read in his spare time. (*Id.*)

As for Claimant's second challenge, the Commissioner argues that the ALJ "captured [Claimant's] mental limitations by restricting him to jobs involving understanding, remembering, and carrying out simple instructions and occasional interaction with the public." (*Id.* at 16). Moreover, the Commissioner contends that the ALJ adequately explained his reasons for including those limitations in the RFC finding. (*Id.* at 16-17). The Commissioner insists that the mental examination findings and non-examining agency consultant opinions support the ALJ's RFC finding. (*Id.* at 17). Furthermore, the Commissioner asserts that Claimant never sought mental health

treatment and that he reported the ability to perform a wide variety of daily activities. (*Id.* at 17-18). The Commissioner argues that the record evidence does not establish any additional mental limitations. (*Id.* at 19).

In his reply memorandum, Claimant focuses on his first challenge to the Commissioner's decision. Claimant maintains that the ALJ was required to provide some explanation in his decision concerning how he considered and weighed ALJ Chapman's prior decision. (ECF No. 15 at 1). Claimant avers that this principle applies to a greater extent where the findings in the later decision are less favorable to the claimant than those in the prior decision. (*Id.* at 2). Furthermore, Claimant insists that the ALJ's error was not harmless because the issue of Claimant's literacy affected the application of the Grids to his case. (*Id.* at 4). Claimant highlights his past achievement test scores and notes that his wife completed his disability forms for him. (*Id.*)

## V.    Relevant Mental Health Evaluation and Opinion Evidence[2]

On January 10, 2011, Amy Guthrie, M.A., completed a Mental Status Examination of Claimant for the West Virginia Disability Determination Service. (Tr. at 283-87). Ms. Guthrie noted that Claimant was cooperative with normal posture and gait. (Tr. at 283). Claimant complained of difficulty falling asleep, wanting to cry twice each week, decreased appetite with reported weight loss of thirty to forty pounds over the past year, fatiguing easily, and feelings of anxiety and irritability. (Tr. at 284). Claimant told Ms. Guthrie that he was anxious about his finances and he would not be anxious if he had money to pay his bills. (*Id.*) He also admitted experiencing suicidal thoughts without any plan for the preceding year. (*Id.*) Claimant denied receiving any outpatient or inpatient

---

[2] Because Claimant's challenges solely relate to his mental limitations, the undersigned limits the following summary to evidence concerning Claimant's mental health. The undersigned notes that there are no mental health treatment notes in the record.

mental health treatment, and he indicated that he had not seen a psychiatrist or a counselor. (*Id.*) With respect to his education, Claimant reported that he completed the twelfth grade, and he repeated the first grade. (Tr. at 285). Claimant indicated that he was placed in learning-disabled classes when he started junior high school. (*Id.*) His grades ranged from B's to D's, with math being especially difficult. (*Id.*) As for work history, Claimant told Ms. Guthrie he worked for a restaurant from 2004 through 2009 as a driver, dish washer, and food preparer. (*Id.*) Claimant quit that job when he was asked to work the night shift, which his wife did not want him to do. (*Id.*) Prior to that, Claimant worked in similar positions at two other restaurants for the previous twenty-five years, and he spent two summers working construction. (*Id.*)

Upon examination, Claimant was cooperative and exhibited relevant and coherent speech. (*Id.*) He was oriented in all spheres. (*Id.*) Ms. Guthrie recorded that Claimant appeared mildly depressed with a flat affect. (*Id.*) Claimant's thought process and content were within normal limits except for occasional thought blocking. (*Id.*) Claimant's perception, insight, and psychomotor behavior were within normal limits. (*Id.*) Claimant's judgment was found to be mildly deficient. (*Id.*) Ms. Guthrie noted that Claimant's immediate and remote memory were within normal limits; however, his recent memory was markedly deficient based on his ability to recall only one of four words after thirty minutes. (Tr. at 285-86). Claimant's concentration was moderately deficient. (Tr. at 286). He was unable to perform serial sevens and he could not spell the word "world" backwards. (*Id.*) Ms. Guthrie observed that Claimant's persistence was within normal limits and his pace was mildly slow. (*Id.*) She opined that Claimant's social functioning was mildly deficient based on his depressed mood and flat affect; however, Claimant was able to converse with Ms. Guthrie, maintain adequate eye contact, and

behave in a socially appropriate manner. (*Id.*) Claimant stated that he was able to cook, care for his personal hygiene, wash dishes, mow the lawn with breaks, and drive sporadically. (*Id.*) He was also able to visit the grocery store once each week, visit his mother once each month, receive a visit from a relative or friend once each month, and talk on the phone. (*Id.*)

Based on her examination of Claimant, Ms. Guthrie diagnosed Claimant with major depressive disorder, recurrent, severe without psychotic features; and anxiety disorder, not otherwise specified. (*Id.*) Ms. Guthrie opined that Claimant's prognosis was fair with treatment. (Tr. at 287). She indicated that Claimant was capable of managing his finances. (*Id.*)

On January 18, 2011, Sushil M. Sethi, M.D., completed a Disability Determination Examination of Claimant for the West Virginia Disability Determination Service. (Tr. at 290-94). Claimant reported experiencing depression and anxiety as a result of being unemployed. (Tr. at 290). He denied any drug or alcohol abuse. (*Id.*) Claimant informed Dr. Sethi that he did not see a psychiatrist for his mental health symptoms because he was able to talk to his wife and did not need psychiatric care. (Tr. at 291).

Frank Roman, Ed.D., completed a Psychiatric Review Technique on January 21, 2011. (Tr. at 297-310). Dr. Roman opined that Claimant's impairments of affective disorder (depressive syndrome) and anxiety-related disorder were non-severe. (Tr. at 297, 300, 302). Dr. Roman concluded that Claimant had mild limitation in activities of daily living, maintaining social function, and maintaining concentration, persistence, or pace. (Tr. at 307). Dr. Roman observed that Claimant had no episodes of decompensation of extended duration. (*Id.*) He noted that the evidence did not establish the presence of the paragraph "C" criteria for Listings 12.04 and 12.06. (Tr. at 308). In the Consultant's

Notes section of the form, Dr. Roman summarized the findings of Ms. Guthrie's examination. (Tr. at 309). Dr. Roman also noted that Claimant stated in his Adult Function Report that he was able to prepare meals, care for his personal hygiene, clean his home, shop each week, and do laundry. (*Id.*) Dr. Roman opined that Claimant was credible based on the medical evidence of record. (*Id.*) Dr. Roman indicated that Claimant had no history of psychiatric treatment and that Claimant's activities of daily living were limited only by his physical impairments. (*Id.*) He reiterated that Claimant's mental impairments were nonsevere. (*Id.*)

On June 15, 2012, Brenda Tebay, M.A., completed an Adult Mental Status Examination of Claimant. (Tr. at 312-14). Claimant informed Ms. Tebay that he had a lifelong history of sadness, hopelessness, helplessness, and guilt because he was unable to support his family. (Tr. at 312-13). He reported experiencing sleeplessness, suicidal thoughts, racing thoughts, and shortness of breath. (Tr. at 312-13). At the time of the examination, Claimant was not prescribed any medications for his mental health, and he denied any history of mental health treatment. (Tr. at 313). He reported that he smoked two packs of cigarettes per day and drank six to twelve beers each night. (*Id.*) He indicated that he had not worked since 2005, and his daily activities involved working around his house. (*Id.*)

Upon examination, Ms. Tebay noted that Claimant was cooperative and his psychomotor activity was calm. (*Id.*) Claimant exhibited clear and coherent speech, and he was oriented in all spheres. (*Id.*) Ms. Tebay observed that Claimant's affect was flat and he appeared tearful with a depressed mood. (*Id.*) He admitted to experiencing suicidal thoughts. (*Id.*) Ms. Tebay found that Claimant's thought process, thought content, insight, and judgment were within normal limits. (*Id.*) Claimant's concentration

was moderately deficient based on his performance during a serial threes test. (*Id.*) Ms. Tebay recorded that Claimant's recent memory was moderately deficient; however, his immediate and remote memory were within normal limits. (Tr. at 313-14). Ms. Tebay opined that Claimant's social functioning was mildly deficient. (Tr. at 314).

Ms. Tebay diagnosed Claimant with major depressive disorder, recurrent, moderate; and alcohol abuse nicotine related disorder not otherwise specified. (*Id.*) She indicated that Claimant's prognosis was guarded. (*Id.*) She also recorded that Claimant could manage his own finances. (*Id.*)

Claimant underwent a second Disability Determination Examination by Dr. Sethi on June 19, 2012. (Tr. at 317-21). Claimant again reported that he experienced anxiety and depression because he was unemployed. (Tr. at 318). He denied working at the time of the examination, but indicated that he "worked at the pizza place as needed." (*Id.*) He stated that he was not currently receiving counseling or medication for his depression. (*Id.*)

On July 3, 2012, Philip E. Comer, Ph.D., completed a Psychiatric Review Technique. (Tr. at 88). Dr. Comer considered Claimant's affective disorder (depressive syndrome) and substance addiction disorder. (*Id.*) He opined that Claimant experienced mild limitation in activities of daily living, and moderate limitation in maintaining social functioning and maintaining concentration, persistence, or pace. (*Id.*) He wrote that Claimant had "one or two" episodes of decompensation of extended duration. (*Id.*) He also noted that the evidence did not establish the presence of the paragraph "C" criteria for Listing 12.04. (*Id.*)

That same day, Dr. Comer completed a Mental Residual Functional Capacity Assessment. (Tr. at 91-93). As to Claimant's understanding and memory limitations, Dr.

Comer opined that Claimant was moderately limited in his ability to understand and remember detailed instructions; however, Claimant was not significantly limited in his abilities to remember locations and work-like procedures, and to understand and remember very short and simple instructions. (Tr. at 91).

With respect to Claimant's concentration and persistence, Dr. Comer concluded that Claimant was moderately limited in his abilities to carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, perform at a consistent pace without an unreasonable number and length of rest periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. at 92). Claimant was not significantly limited in his abilities to carry out very short and simple instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others, and make simple work-related decisions. (*Id.*)

Regarding social limitations, Dr. Comer determined that Claimant was moderately limited in his ability to interact with the general public; however, Claimant was not significantly limited in his abilities to ask simple questions or request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (*Id.*)

On the subject of adaptive limitations, Dr. Comer indicated that Claimant was moderately limited in his ability to respond appropriately to changes in the work setting, but he was not significantly limited in his abilities to be aware of normal hazards, take precautions, travel in unfamiliar places, use public transportation, set realistic goals, or

make plans independently. (Tr. at 93).

Dr. Comer concluded that Claimant's statements were credible and "reasonably consistent" with the consultative examination findings. (*Id.*) He opined that Claimant retained the mental and emotional capacity for simple or routine work-like activity in a low-pace work environment with limited social interaction requirements. (*Id.*) Dr. Comer noted that Claimant had previously been awarded DIB, but those benefits were terminated when Claimant returned to work. (*Id.*)

Debra Lilly, Ph.D., completed a Psychiatric Review Technique on July 21, 2012. (Tr. at 102). Dr. Lilly opined that Claimant had mild limitation in activities of daily living, and moderate limitation in maintaining social functioning and maintaining concentration, persistence, or pace. (*Id.*) She also recorded that Claimant had experienced "one or two" episodes of decompensation of extended duration. (*Id.*) She determined that the evidence did not establish the presence of the paragraph "C" criteria for Listing 12.04. (*Id.*)

Dr. Lilly also assessed Claimant's mental residual functional capacity. (Tr. at 105-07). Her findings as to Claimant's understanding and memory limitations were identical to Dr. Comer's. (Tr. at 106). As for Claimant's concentration and persistence limitations, Dr. Lilly opined that Claimant was moderately limited in his ability to carry out detailed instructions; however, he was not significantly limited in his abilities to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without

interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Lilly agreed with the social interaction and adaptive limitations found by Dr. Comer. (Tr. at 107). Overall, Dr. Lilly opined that Claimant experienced "some moderate limitations," but he retained the ability "to perform one and two step tasks in settings that do not require frequent interactions with the general public." (*Id.*) Dr. Lilly concluded that the decision awarding benefits in 2003 was irrelevant to the present claim, except the prior decision established that Claimant suffered from borderline intellectual functioning. (*Id.*)

## VI.   <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with

such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

### A. Acquiescence Ruling 00-1(4)

In his first challenge, Claimant contends that the ALJ failed to comply with AR 00-1(4). The Ruling was created to explain how the SSA would apply the Fourth Circuit's holdings in *Lively v. Sec'y of Health and Human Servs.*, 820 F.2d 1391 (4th Cir. 1987) and *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999). In those decisions, the court of appeals addressed how an ALJ should treat findings in a prior administrative proceeding when determining the legitimacy of a later claim for benefits made by the same applicant. Interpreting *Lively* and *Albright*, AR 00-1(4) states, in pertinent part:

> [W]hen adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in Lively. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period

being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in Albright. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

65 Fed.Reg. 1936-01, 2000 WL 17162 (Jan. 12, 2000).

Courts within the Fourth Circuit have generally found remand appropriate under AR 00-1(4) where an ALJ neglects to discuss a prior decision at the administrative hearing level, and the prior decision contains findings more favorable to the claimant than the ALJ's subsequent decision. *See Barbee v. Colvin*, No. 5:14-CV-424, 2015 WL 5039124, at *8-*9 (E.D.N.C. Aug. 7, 2015) (recommending remand where ALJ's RFC finding did not include sit/stand option that was contained in past decision and ALJ failed to discuss past decision), *report and recommendation adopted by* 2015 WL 5054402 (E.D.N.C. Aug. 26, 2015); *Bennett v. Comm'r of Soc. Sec. Admin.*, No. 5:14CV100, 2015 WL 1280959, at *3, *13-*15 (N.D.W. Va. Mar. 20, 2015) (remanding where ALJ failed to discuss step two findings in prior decision and ALJ found fewer severe impairments at step two in later decision); *Manuel v. Colvin*, No. 1:11CV8, 2015 WL 519481, at *5-*6 (M.D.N.C. Feb. 9, 2015) (recommending remand where ALJ neglected to consider favorable step four finding in past decision and stating that court could not meaningfully review ALJ's decision because ALJ failed to discuss past decision); *Neal v. Astrue*, No. 5:08-cv-1296, 2010 WL 1404096, at *7 (S.D.W.Va. Mar. 31, 2010) (remanding where ALJ's recent decision limited claimant to light work, but prior decision limited claimant to sedentary work, and ALJ failed to conduct analysis required by AR 00-1(4)); *Dozier v. Astrue*, No. 5:08CV174, 2009 WL 3063020, at *2, *45 (N.D.W. Va. Sept. 22, 2009) (remanding where ALJ cursorily mentioned previous finding of disability and failed to indicate weight assigned to that decision); *cf. Eatmon v. Colvin*, No. 5:13-CV-554, 2014 WL 4285140, at

*2 (E.D.N.C. Aug. 29, 2014) (remanding where ALJ failed to discuss court's prior decision finding claimant disabled). Similarly, in applying AR 00-1(4), this Court has recognized that an ALJ "must provide some semblance of an explanation to enable judicial review of his decision" where the ALJ's findings conflict with conclusions in a prior decision. *Bailey (Christopher) v. Colvin*, No. 6:13-cv-29150, 2015 WL 769843, at *11 (S.D.W.Va. Feb. 23, 2015). On the other hand, at least one court within this circuit has found an ALJ's failure to mention AR 00-1(4) and a past decision does not require remand if the prior decision is contained in the List of Exhibits attached to the most recent decision and the findings in the subsequent decision are similar or more favorable to the claimant. *Harris v. Astrue*, No. 2:12-CV-45, 2013 WL 1187151, at *8 (N.D.W. Va. Mar. 21, 2013).

In previously considering the application of AR 00-1(4), the undersigned explained that the Ruling "requires the ALJ to consider and weigh the prior decision as evidence, but does not impose a burden on the ALJ to explicitly state the weight he assigned to this evidence." *McKay v. Colvin*, No. 3:12-1601, 2013 WL 3282928, at *13 (S.D.W.Va. June 27, 2013). In *McKay*, the undersigned found that remand was not warranted where the ALJ failed to plainly state the weight afforded to findings in a past decision because the ALJ "clearly considered and incorporated [the prior ALJ's] findings in the disability assessment." *Id.* (citing *Melvin v. Astrue*, 602 F. Supp. 2d 694, 704-05 (E.D.N.C. 2009)). Furthermore, the undersigned noted that the ALJ's later RFC finding in *McKay* was consistent with the findings of the prior decision. *Id.* In addition, the undersigned recognized that the harmless error doctrine applied to errors under AR 00-1(4) and found that any error by the ALJ in neglecting to assign particular weight to the prior findings did not prejudice the claimant. *Id.* at *13-*14. Specifically, the undersigned noted that a hypothetical posed by the ALJ at the administrative hearing included the prior RFC

findings along with additional limitations, and the vocational expert testified that a significant number of jobs could be performed by a person with those limitations. *Id.*

Although the undersigned agrees with the Commissioner that a step-by-step explication is not required for an ALJ to comply with AR 00-1(4), at bottom, an ALJ's written decision must provide an explanation for discrediting or failing to adopt past administrative findings favorable to the claimant. *Cf. Grant v. Colvin*, No. 4:12cv191, 2014 WL 852080, at *7 (E.D. Va. Mar. 4, 2014) (recognizing that ALJ need not "walk through each factor in order to comply with AR 00-1(4)" and finding that ALJ complied with AR 00-1(4) where he discussed the Ruling, the prior decision, and medical evidence that warranted changes in the RFC finding). Insofar as the Commissioner contends that the Ruling is satisfied by an ALJ's general statement that the entire record was considered, the undersigned disagrees with her proposed bright-line rule. To hold that such boilerplate language meets the requirements of the Ruling would universally render an ALJ's written decision unreviewable under AR 00-1(4). Quite simply, the ALJ has a duty to resolve conflicts within the record and provide the claimant with a justification for the resolution. *See Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993); *Miller v. Colvin*, No. 2:13-cv-31251, 2015 WL 917772, at *21 (S.D.W.Va. Mar. 3, 2015). Without question, this duty extends to conflicts between the Commissioner's own findings.

With these principles in mind, the undersigned turns to the ALJ's decision in this case.[3] As indicated above, Claimant was granted DIB for the period of August 13, 1999 through August 15, 2002 by ALJ Chapman. In that decision, ALJ Chapman summarized the findings of a December 2001 consultative psychological evaluation attended by

---

[3] Because Claimant focuses his argument on ALJ Chapman's findings related to his literacy and Rule 202.09 of the Grids, the undersigned's discussion primarily centers on that issue.

Claimant and performed by licensed psychologist John R. Atkinson, Jr., M.A. (Tr. at 69). Mr. Atkinson recorded that Claimant read at a third-grade level based on test results from the WRAT-3 and opined that the score was valid. (*Id.*) Based on his evaluation of Claimant, which also included the administration of the Wechsler Adult Intelligence Scale, Third Edition, Mr. Atkinson diagnosed Claimant with developmental reading disorder, verbal learning disorder, and borderline intellectual functioning. (Tr. at 69-70). ALJ Chapman also noted that Claimant was in special education classes in school and took an oral driver's license test. (*Id.*) Claimant testified at the administrative hearing before ALJ Chapman that he could read "small words" and occasionally read the newspaper. (Tr. at 70). At step two, ALJ Chapman found that Claimant's developmental reading disorder and borderline intellectual functioning, among other impairments, were severe. (Tr. at 71). ALJ Chapman also included Claimant's third-grade reading level and developmental reading disorder in his RFC finding. (Tr. at 71-72). Notwithstanding, in considering Claimant's education at step five, ALJ Chapman found that Claimant possessed a "high school education in special education classes." (Tr. at 72).

The ALJ mentioned neither ALJ Chapman's written decision nor Claimant's ability to read and write, other than noting that Claimant reported he could follow written instructions "ok" and that Claimant possessed a high school education. (Tr. at 21, 24). The ALJ should have explained the findings related to Claimant's literacy contained in the 2003 decision and why he did not include any reading or writing limitations in the most recent RFC finding. Instead, the ALJ missed the subject entirely, contrary to AR 00-1(4) and the decisions of many district courts within this circuit interpreting the Ruling.

Notwithstanding, the undersigned **FINDS** that the ALJ's error in failing to discuss and assign weight to the past findings regarding Claimant's literacy was harmless.

Claimant insists that the error was prejudicial because a finding that he meets the definition of illiteracy under 20 C.F.R. § 404.1564(b)(1) would entitle him to benefits under Rule 202.09 of the Grids. Rule 202.09 indicates that an illiterate individual restricted to light work who is closely approaching advanced age and has unskilled or no transferable job skills is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Title 20 C.F.R. § 404.1564(b) describes several different categories of educational level that may be used in conjunction with the Grids:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

In order for Claimant to meet the criteria of Rule 202.09, he must be illiterate as defined above. However, nothing in the record conclusively suggests that Claimant "cannot read or write a simple message." 20 C.F.R. § 404.1564(1). In fact, abundant evidence exists that Claimant *can* read or write a simple message. To begin, Claimant testified at his administrative hearing in February 2003 that he was capable of reading "small words" and the newspaper. (Tr. at 70). Claimant similarly testified at his December

2013 administrative hearing that he reads during breaks in performing chores. (Tr. at 52). In a May 2012 Disability Report completed by Claimant's wife, she indicated that Claimant could read and understand English and that he could write more than his name in English. (Tr. at 240). That same month, Claimant's wife completed an Adult Function Report, wherein she wrote that Claimant's ability to follow written instructions was not "too bad" and that Claimant used glasses for reading. (Tr. at 251-52).

The ALJ also recognized that Claimant performed semi-skilled work as a pizza delivery driver before his alleged onset date, although the ALJ did not specify the literacy level required by this particular job. (Tr. at 24, 60). In addition, the ALJ acknowledged that Claimant completed high school, which is persuasive, but not dispositive, evidence that Claimant is not illiterate as defined by 20 C.F.R. § 404.1564(b)(1). *See* 20 C.F.R. § 404.1564(b) ("[T]he numerical grade level that you completed in school may not represent your actual educational abilities."). Importantly, ALJ Chapman *never concluded that Claimant was illiterate*; rather, ALJ Chapman found that Claimant possessed a high school education with some special education classes. (Tr. at 72). Furthermore, Claimant's counsel asserted at the December 2013 administrative hearing that Claimant met Rule 201.12 or 201.14 of the Grids; both of those rules are applicable to claimants who have a high school education or higher as defined by 20 C.F.R. § 404.1564(b). (Tr. at 35). Claimant's counsel did not argue at the hearing that he was illiterate, nor did Claimant testify that he could not read or write.

Lastly, Claimant's performance on the WRAT-3 does not mandate a finding of illiteracy. Claimant tested at a third grade reading level, which does not preclude a finding that he can read or write a simple message. *See Starks v. Bowen*, 873 F.2d 187, 190 (8th Cir. 1989) (holding ALJ's finding that claimant was literate was supported by substantial

24

evidence where claimant achieved reading score below third grade equivalent on WRAT and was able to read "some" words in newspaper articles); *Williams v. Astrue*, No. 0:10-004, 2011 WL 1261339, at *10 (D.S.C. Feb. 2, 2011) (finding that claimant's ability to read at third-grade level did not preclude determination by ALJ that claimant was literate). For these reasons, Claimant possesses at least a "marginal education" as defined by 20 C.F.R. § 404.1564(b). Consequently, even if the ALJ had incorporated the findings of ALJ Chapman's 2003 written decision into the most recent written decision, Claimant would not have met Rule 202.09 of the Grids.

To the extent that Claimant might protest that the ALJ's RFC finding and controlling hypothetical question should have included a limitation regarding Claimant's literacy, again any error was harmless. The jobs listed by the vocational expert at the administrative hearing in response to the ALJ's controlling hypothetical question were unskilled. (Tr. at 25, 61). The Medical-Vocational Rules state: "While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. § 404, Subpart P, App. 2, ¶ 202.00(g). Moreover, the jobs identified by the vocational expert require the lowest "language" level in the Dictionary of Occupational Titles ("DOT"), and the job descriptions for each position indicate that very minimal reading or writing, if any, is required. *See* DOT 529.687-186, 1991 WL 674781 (sorter); DOT 706.687-010, 1991 WL 679074 (assembler); DOT 920.687-126, 1991 WL 687992 (marker). For the aforementioned reasons, the undersigned **FINDS** that the ALJ's error under AR 00-1(4) was harmless. Therefore, Claimant's first ground for relief must fail.

**B. The ALJ's RFC Finding and Controlling Hypothetical Question**

In his second argument, Claimant asserts that the ALJ's RFC finding failed to adequately address Claimant's moderate difficulty in maintaining concentration, persistence, or pace. Claimant contends that the ALJ erred by neglecting to include any limitations in his RFC finding and the hypothetical questions posed to the vocational expert related to Claimant's ability to focus and stay on task. For support, Claimant primarily relies on the Fourth Circuit's recent decision is *Mascio*.

In *Mascio*, the ALJ determined at step three that the claimant experienced moderate difficulties in maintaining concentration, persistence, or pace; however, the ALJ failed to include any mental limitations in the controlling hypothetical question presented to the vocational expert. 780 F.3d at 637-38. While the vocational expert supplied a list of jobs that were unskilled, the Fourth Circuit found that this was insufficient to account for the claimant's moderate mental limitations and held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court indicated that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."[4] *Id.* Because the ALJ failed to either include any mental limitation in the RFC or explain why a "moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation" in the ALJ's RFC finding, the Fourth

---

[4] Listing 12.00 explains that "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpart P, App. 1, ¶ 12.00(C)(3).

Circuit found that remand was appropriate. *Id.*

The same issue was recently addressed by this Court in *Jackson v. Colvin*, No. 3:14-cv-24834, 2015 WL 5786802, at *4-*5 (S.D.W.Va. Sept. 30, 2015). There, the ALJ found that the claimant experienced moderate deficiencies in concentration, persistence, or pace. *Id.* at *1. Attempting to take this limitation into account, the ALJ restricted the claimant to work involving simple tasks and instructions; however, the Court recognized that this was inadequate under *Mascio. Id.* at *4. The Court explained the principle espoused in *Mascio*: "If the ALJ found [the claimant] had moderate mental limitations related to concentration, persistence, or pace—which here the ALJ found—the ALJ should have either included those limitations in the hypothetical or explained in the RFC assessment why, despite finding these moderate mental limitations, it was unnecessary to include them in the hypothetical. Failure to do so requires remand." *Id.* The Court found that remand was appropriate because the ALJ did neither.[5] *Id.* at *5.

In contrast, this Court found that remand was not required under *Mascio* in *Evans v. Colvin*, No. 14-cv-29072, 2016 WL 1258491 (S.D.W.Va. Mar. 30, 2016). In *Evans*, the ALJ found that the claimant experienced moderate limitation in concentration, persistence, or pace at step three. 2016 WL 1258491, at *5. The ALJ's RFC finding limited the claimant to simple, routine tasks, and the Court found that this restriction accurately reflected the claimant's mental ability. *Id.* Describing the appropriate standard, the Court observed that "[w]here the medical evidence shows that a claimant can carry out simple tasks, an ALJ's hypothetical to the vocational expert to that effect will sufficiently account for a claimant's moderate limitation in maintaining concentration, persistence, and pace."

---

[5] The Court noted that "what was pivotal in *Mascio* was not the claims or evidence presented in the agency proceeding, but the ALJ's finding [of moderate difficulties in concentration, persistence, or pace]." *Jackson*, 2015 WL 5786802, at *4.

*Id.* (quoting *Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013)) (markings omitted). The Court determined that the claimant's mental health treatment records and the opinion of a state agency medical consultant supported the ALJ's finding that the claimant could perform simple, routine tasks, despite moderate limitation in concentration, persistence, or pace. *Id.* In the end, the Court concluded that "the ALJ explained why [the claimant's] moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation in [the claimant's] residual functional capacity, beyond restricting [the claimant] to unskilled work." *Id.*

The undersigned also recently examined the Fourth Circuit's *Mascio* decision on two occasions. First, in *Bailey (Jason) v. Colvin*, the ALJ concluded at step three that the claimant suffered from moderate difficulty in maintaining concentration, persistence, or pace as a result of his depressive disorder and alcohol abuse, but "curiously downplayed [the claimant's] mental imitations when assessing his RFC." No. 5:14-cv-29435, 2015 WL 9595499, at *16 (S.D.W.Va. Dec. 4, 2015). The only restriction that the ALJ included in the RFC finding to account for the claimant's moderately deficient concentration, persistence, or pace was to eliminate jobs that involved detailed or complex instructions. *Id.* However, in light of *Mascio*, the undersigned found that this limitation did "not appear to directly address [the claimant's] ability to stay on task," and furthermore, "the ALJ never explained how that limitation, alone, was sufficient in [the claimant's] case." *Id.* Compounding the error, the ALJ's analysis of the claimant's mental limitations was "fractured and confused." *Id.* at *17. Ultimately, the undersigned recommended that the Commissioner's decision be reversed because "the ALJ's conclusion that [the claimant] could perform work involving simple instructions 'on a sustained basis' did not adequately address his determination that [the claimant] labor[ed] under moderate

difficulties in concentration, persistence, or pace," and the ALJ "failed to sufficiently explain and resolve th[e] apparent conflict." *Id.*

Second, the undersigned recommended remand based on *Mascio* in *Graham v. Colvin*, No. 3:14-cv-27280, 2015 WL 7752620 (S.D.W.Va. Nov. 13, 2015). In that case, the claimant argued that the ALJ's controlling hypothetical failed to account for the moderate difficulties in concentration, persistence, or pace that the ALJ found step three. *Id.* at *21. The undersigned agreed that the ALJ's RFC finding, which limited the claimant to simple, routine, and repetitive tasks, did not sufficiently address the claimant's limitations in concentration, persistence, or pace because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* at *22 (quoting *Mascio*, 780 F.3d at 638). Furthermore, because the ALJ "failed to sufficiently explain why additional limitations were not included in the RFC finding given his determination that Claimant labored under these moderate difficulties," the undersigned found that the Commissioner's decision should be reversed. *Id.*

Here, like all of the decisions discussed above, the ALJ found at step three that Claimant experienced moderate limitations in concentration, persistence, or pace. (Tr. at 20-21). In the RFC discussion, the ALJ restricted Claimant to understanding, remembering, and carrying out simple instructions. (Tr. at 21). The ALJ recognized that Ms. Guthrie found normal persistence when examining Claimant, but she also recorded concentration deficits and a mildly slow pace. (*Id.*) The ALJ also noted Ms. Guthrie's opinion that Claimant's "impairments do appear to affect his interpersonal and vocational abilities," to which the ALJ assigned "great weight." (Tr. at 22). Additionally, the ALJ stated that he "assign[ed] great weight" to Dr. Comer's opinion that Claimant possessed "the mental and emotional capacity for simple routine work in a *low pace work*

*environment* that has limited social interaction requirements as this opinion is consistent with the record." (Tr. at 23) (emphasis added). The ALJ further found that Dr. Comer's overall opinion and mental RFC assessment were consistent with the record evidence, except for his specific determinations that Claimant was moderately limited in his ability to perform activities within a schedule, complete a normal workday or workweek, and perform at a consistent pace, which the ALJ found were contradicted by the consultative examination findings and Dr. Lilly's opinion. (*Id.*) Additionally, the ALJ assigned "great weight" to Dr. Lilly's opinions as they were "generally consistent with the record." (*Id.*) In further explaining the RFC finding, the ALJ indicated that "[s]ince [Claimant] has some concentration issues ... he is limited to simple instructions." (*Id.*) The ALJ later reiterated in the written decision that Claimant was limited to simple instructions given "his underlying mental disorders." (Tr. at 24).

Having reviewed the ALJ's written discussion of the mental examination and opinion evidence, the undersigned **FINDS** that the ALJ failed to adequately explain why he declined to include additional limitations regarding concentration, persistence, or pace in the RFC finding. First, the ALJ was mistaken in his apparent assumption that restricting Claimant to simple instructions alone would generally account for a moderate limitation in concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638 ("[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."). Second, insofar as the ALJ relied on the state agency consultants' opinions that Claimant could perform simple work, despite his moderate limitations in concentration, persistence, or pace, the ALJ's discussion contains an obvious, unresolved conflict, which distinguishes this case from *Evans*. Although the ALJ expressly assigned "great weight"

to Dr. Comer's opinion that Claimant could perform simple or routine work in a low-pace work environment, the ALJ neglected to include the "low-pace work environment" limitation in the RFC finding and in the controlling hypothetical question he posed to the vocational expert. (Tr. at 21, 23, 61, 88, 93). To further confuse matters, the ALJ later indicated that he disagreed with Dr. Comer's function-by-function assessment that Claimant was moderately limited in "performing at a consistent pace." (Tr. at 23). The ALJ never resolved the fundamental conflict created by assigning great weight to Dr. Comer's overall RFC opinion, **which explicitly included a low-pace work environment limitation**, while simultaneously disagreeing with the underlying function-by-function assessment that supported the work environment limitation. (Tr. at 23). Nor did the ALJ explain the weight of additional record evidence corroborating a low-pace work environment limitation; for example, Ms. Guthrie's opinion that Claimant's pace was "mildly slow." (Tr. at 286). The ALJ's assignment of great weight to Dr. Lilly's opinion merely exacerbated the conflict given her conclusion that Claimant was not significantly limited in his ability to perform at consistent pace. Consequently, the agency consultants provided contradictory opinions on a material issue related to Claimant's moderate limitations in concentration, persistence, or pace. Instead of examining and reconciling the conflicts, and then explaining how the RFC finding fully accounted for Claimant's limitations, the ALJ provided a puzzling and ambiguous discussion that the Court simply cannot decipher.

Finally, the undersigned cannot determine on this record whether the ALJ's error was harmless. The jobs used to support the ALJ's step five finding (sorter, assembler, and marker) all seem to require sustained concentration, persistence, or pace. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005) (finding that assembler and sorting

jobs appeared to require "a degree of sustained concentration, persistence and pace"). Certainly, the undersigned could expect such positions to require a consistent pace or production quota based on the DOT's description of each job. *See Jutte v. Colvin*, No. 2:15-cv-0906, 2015 WL 9897839, at *2 (W.D. Wash. Dec. 23, 2015) (finding that ALJ erred when he failed to include limitation regarding pace or production quota in controlling hypothetical, a limitation that was supported by the record, and vocational expert identified marker as job claimant could perform), *report and recommendation adopted by* 2016 WL 270877 (W.D. Wash. Jan. 19, 2016). Although sorter, assembler, or marker jobs that are low-paced may exist, the undersigned cannot say for certain that Claimant could perform those jobs, nor can the undersigned conclude that those jobs exist in significant numbers in national economy. Those questions are best left to the ALJ with the aid of a vocational expert's testimony.

Because the ALJ's RFC discussion lacks an adequate explanation concerning Claimant's mental limitations and the undersigned cannot conclude that the ALJ's error was harmless, the undersigned **FINDS** that the ALJ's decision at step five is not supported by substantial evidence. *See Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005) ("The Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities."). Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be remanded so that the ALJ may reconsider, or elaborate on his discussion of, Claimant's mental restrictions. On remand, the ALJ may also wish to correct his error in neglecting to discuss Claimant's past favorable decision.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 10), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**  June 2, 2016

Cheryl A. Eifert
United States Magistrate Judge

34